E. MOCH CO. v. SECURITY BANK OF NEW YORK. (No. 6780.)

(Supreme Court, Appellate Division, First Department. February 11, 1915.)

CORPORATIONS (§ 432*)—MISAPPROPRIATION BY OFFICER—ACTIONS—EVIDENCE.

In an action for money had and received, to recover the amount of checks drawn to the order of a corporation and deposited by its president in his personal account with defendant, the proceeds of which he subsequently withdrew, where defendant alleged that after such transactions the corporation released and discharged the president from all liability to it for such checks and the proceeds thereof, and by its board of directors ratified and confirmed his acts and transactions, it was error to exclude evidence that the only party other than the president having any interest in the corporation held stock under an agreement by which it was in effect security for a debt, that after the transactions complained of such creditor and the president settled and adjusted the transaction, and the president transferred all of his stock and other securities to the creditor, as a result whereof any claim of the corporation against the president was extinguished, and that the corporation had adopted, ratified, and confirmed the acts and transactions of the president, as any settlement by or on behalf of the corporation, tending to release the president from liability, inured to the benefit of the bank.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. § 432.*]

Dowling and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the E. Moch Company against the Security Bank of New York. Judgment for plaintiff on verdict, motion for new trial denied, and defendant appeals. Judgment and order reversed.

See, also, 157 App. Div. 726, 142 N. Y. Supp. 779.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Burt D. Whedon, of New York City (Herman B. Goodstein and Leo Oppenheimer, both of New York City, on the brief), for appellant.

William Bondy, of New York City, for respondent.

INGRAHAM, P. J. The first action was brought to recover the proceeds of a check drawn to the order of the plaintiff and which had been deposited by one Eugene Moch to his individual account with the defendant. Defendant having interposed an answer to that complaint, plaintiff subsequently brought another action, alleging 21 separate causes of action to recover for 21 checks drawn to the order of the plaintiff and deposited with the defendant to the individual credit of Eugene Moch. To that complaint defendant also interposed an answer, whereupon the two actions were consolidated. At the trial the court directed a verdict for the plaintiff for the full amount, and it is from the judgment entered upon this that the defendant appeals.

The respondent in his points states that these two actions involve the conversion of these 21 checks, but I cannot find any allegation in either complaint which alleges that the defendant converted these

checks, and the case does not seem to have been disposed of by the trial judge upon the theory of conversion. The complaint in the first action and the allegations as to the different causes in the second action are the same except as to dates and names. It alleges that on or about November 13, 1908, Sears, Roebuck & Co. for a valuable consideration sent to the plaintiff its check on the Chase National Bank of New York, payable to the order of the plaintiff, for the sum of $4,358.55; that on or about November 17, 1908, Eugene Moch, who at said time was the president of the said E. Moch Company, received said check and indorsed thereon "E. Moch Company," and thereunder "Eugene Moch," and thereafter deposited said check to his personal account in the defendant bank, which accepted the same and placed it to the personal credit of said Eugene Moch, and afterward applied the proceeds in payment of checks drawn against them by the said Eugene Moch personally and thereby. misappropriated the proceeds thereof to the personal use of Eugene Moch without authority; that defendant had notice that said check and the proceeds thereof were the property of the plaintiff, and with notice putting it upon inquiry, which it failed to make, which would have disclosed the fact that it was placed to the personal credit and account of Eugene Moch and the proceeds thereof withdrawn, paid, and appropriated for the personal use of said Eugene Moch without authority; and that there is now due and owing from the defendant to the plaintiff the sum of $4,358.55, and that no part thereof has been paid, although payment has been demanded by the plaintiff of the defendant. The judgment therefore demanded is the recovery from the defendant of the proceeds of these checks.

There is no allegation that defendant converted the check, or without authority collected it. The cause of action is based upon the fact that defendant collected the check belonging to the plaintiff and paid the proceeds thereof to Moch, instead of to the plaintiff, although defendant had notice of such facts as should have put it upon inquiry that the proceeds belonged to the plaintiff, and not to Eugene Moch individually. The plaintiff therefore demands judgment against the defendant for the proceeds of the check in its hands, which it had paid to Eugene Moch personally, and not to the plaintiff. The distinction between an action brought for conversion of a check, the property of plaintiff, which has been received by defendant, and an action in the nature of an action for money had and received for the proceeds of a check duly collected by a bank, is illustrated in two cases lately decided by this court and by the Court of Appeals. In the case of Havana Central Railroad Co. v. Knickerbocker Trust Co., 135 App. Div. 313, 119 N. Y. Supp. 1035, reversed by the Court of Appeals in 198 N. Y. 422, 92 N. E. 12, the Court of Appeals, after stating the allegations of the complaint, said:

"It is alleged that on account of these matters the defendant has had and received $59,406.26 of the moneys of the plaintiff, and thereby became indebted to the plaintiff in said sum, no part of which has been paid, except that $3,597.91 has been received by the plaintiff from the said C. W. Van Voorhis in reduction of the amount represented by the third check. It will be observed that the complaint contains no averment of any conversion by

the defendant. The only conversion alleged is a misappropriation by C. W. Van Voorhis, the plaintiff's treasurer. The action is for money had and received; the manifest theory of the pleader being that the defendant, by receiving the checks for deposit in the individual personal account of the plaintiff's treasurer under the circumstances disclosed by the complaint, has become legally obligated to repay the money represented by those checks to the plaintiff corporation. This theory is based on the proposition that the checks, when presented to the defendant for deposit, bore upon their face what the learned counsel for the respondent calls 'a shadow,' which ought to have prevented the defendant from taking them or collecting the proceeds without inquiry from some responsible officer of the plaintiff corporation other than its treasurer as to his authority to draw checks against the funds of the corporation payable to his own individual order."

And in summing up the obligation of the defendant the court said:

"That view, stated in the fewest possible words, is that the Central Trust Company (the bank upon which the check was drawn) was the agent of the Havana Central Railroad Company (the plaintiff) to determine whether the checks in controversy were properly payable or not; and when it decided that they were, and paid them to the Knickerbocker Trust Company, which received the proceeds in good faith, no right remains in the railroad corporation to recover such proceeds after the Knickerbocker Trust Company has paid them away."

In Porges v. U. S. Mortgage & Trust Co., 203 N. Y. 181, 96 N. E. 424, the action was on a check, drawn to the order of the plaintiff, which came into the possession of one Hoyt, who indorsed it: "Pay to the order of A. E. Hoyt. Julia W. Porges"—and thereunder, "A. E. Hoyt," and deposited it to his account with the defendant, which placed the amount thereof to his credit and collected the check from the drawee bank. The complaint alleged that the plaintiff was the owner and entitled to the possession of this check, and that the defendant converted it to its own use, and sought to recover the resulting damages. In confirming a judgment for the plaintiff in that case, the court said:

"The title to and ownership of the check passed to the plaintiff by the indorsement of Van Sant and his delivery of it to Hoyt. Hoyt received and held it as her agent under the provisions of the power of attorney which has been set forth at length. The acceptance, control, and collection of the check by the defendant was a wrongful conversion of it, unless directed or authorized by the plaintiff, or in more direct words, unless the power of attorney empowered Hoyt to place upon it the indorsement of the plaintiff and deposit it to his credit with the defendant. * * * Equally clear it is that the defendant did, by receiving the check for the credit of Hoyt and collecting and receiving its proceeds, convert the check, unless the acts of Hoyt in relation to it were within his agency. His rightful dominion over it was created and defined by the contents of the power of attorney. No fact or condition modifying or changing any effect of it arose or existed between the plaintiff and the defendant, or between Hoyt and the defendant, and the defendant, in order to legalize and justify its treatment of the check, must establish that Hoyt kept within the authority it contained."

Thus, in the action for conversion of a check by the defendant without authority of the payee, it seems to me that it is entirely immaterial what the defendant does with the proceeds. He is liable to the owner of the check for its value, and the commencement of the action for its conversion, and for the recovery of damages caused by the conversion, would vest the title to the check in the defendant. If the

complaint in this action had been sufficient to charge the defendant with the conversion of the check, the disposition by the defendant of its proceeds after the conversion was established would be entirely immaterial. On the other hand, where a bank receives a check, and collects it and receives its proceeds, and the owner of the check, or those entitled to the proceeds, base the liability of the collecting bank on a cause of action for money had and received, the proceeds of the check being claimed to be money that the defendant had received, but to which plaintiff was entitled, the plaintiff waives any right to claim conversion of the check, necessarily recognizes the right of the defendant to collect the check, but claims that the proceeds in its hands should be paid to the plaintiff, and therefore asks for a recovery as for money of the plaintiff had and received by the defendant.

Now it seems to me that these complaints are for money had and received, and not for conversion of the checks. It is clearly alleged that the defendant accepted and collected said checks with notice that the checks and the proceeds thereof were the property of the plaintiff, and with notice putting defendant upon inquiry, which it failed to make, and which would have disclosed that the same was deposited and placed to the personal credit and account of Eugene Moch, and collected, and the proceeds thereof withdrawn, paid, and appropriated for the personal use of said Eugene Moch without authority, and that there is now due and owing from the defendant to the plaintiff the said sum, although payment thereof has been demanded by the plaintiff of the defendant. So the plaintiff, in order to recover, was bound to establish, and he sought to establish on the trial, that the defendant received these checks with notice of the fact that the checks and the proceeds thereof were the property of the plaintiff, or that defendant received notice of facts sufficient to put it upon inquiry, which it failed to make.

Now, the facts which were disclosed upon the trial were that on the 28th of August, 1900, the plaintiff corporation was organized under the Business Corporation Law with a capital stock of $12,000, for the purpose of manufacturing ostrich feathers. The three subscribers to this certificate of incorporation were constituted directors for the first year, and one of them was Eugene Moch. It was provided in the certificate of incorporation that the bank account of said corporation be kept in such bank as the president and treasurer of the corporation should select, and all money, checks, and drafts belonging to said corporation should be deposited in said bank account and be withdrawn only by check signed by the president and countersigned or initialed by the treasurer; that no officer or agent of the said corporation shall have power to make, indorse, or accept, in the name or on behalf of said corporation, any note, bill of exchange, draft, or other written instrument for the payment of money, unless thereto duly and specially authorized by the vote of the board of directors, or unless such note, bill, check, draft, or instrument be signed by the treasurer and countersigned by the president, except that the treasurer might indorse for deposit or collection all notes, bills, drafts, and checks received in the business of the said corpora-

tion or belonging to it. The stock of this corporation seems to have been issued to Eugene Moch, and Eugene Moch was duly elected president and one Harry W. Brodie elected treasurer, and they continued its officers down to the time of the transactions in question. Brodie, the treasurer, was called as a witness, was shown these checks, and testified that all of the indorsements were in the handwriting of Moch; that none of the proceeds of these checks had ever been received by the plaintiff; that in 1909, when these checks were received and deposited with the defendant, witness was the owner of 602 shares of stock of the corporation, and the remaining stock at that time was held by Eugene Moch's son.

The checks themselves were introduced in evidence. They were all drawn by third parties to the order of E. Moch Company, and indorsed "E. Moch Company," and underneath that the words "Eugene Moch." They did not purport to be indorsed by any officer of the plaintiff corporation, were not deposited to its credit, and there was nothing on the face to show that E. Moch Company had ever transferred the checks, either to Eugene Moch or to the defendant. There was stamped upon each of these checks the statement, "Received payment," the date, and "Indorsements guaranteed," and signed by the defendant, by its cashier. The checks were paid to the defendant upon such guaranty. I think it clear that this indorsement was not the indorsement of the payee of the check. The checks were drawn in form to order of E. Moch Company. The payee was named as the corporation, and there was an existing corporation of that name. Merely writing the name of the corporation to whom a negotiable instrument is payable on the back of the instrument is not, as I view it, an indorsement by the corporation. A corporation, being an artificial person created by law, can act only through its officers or agents, and this corporation did not assume to act by an officer or agent in indorsing these checks. By its charter its president had no power to indorse a check, or transfer title to a check belonging to the corporation by indorsement, and on the face of the checks the president of the corporation did not assume to indorse them on behalf of the corporation, but signed his individual name, and deposited the check, not for the credit of the corporation, but to his own individual account, and the check thus indorsed was received by the defendant for collection, guaranteed the indorsement.

If the action had been in form for the conversion of the check I am inclined to think the plaintiff would have been entitled to recover upon this proof, without regard to the use defendant had made of the proceeds of the check, on the ground that no title to the check had passed from the corporation to the defendant. But, as before stated, as I read these pleadings, the action is to recover the proceeds of the check as money had and received for plaintiff, and in such an action any defense is admissible which would tend to show that the plaintiff is not in equity and good conscience entitled to the money. And that brings up for determination the defense interposed by the defendant, and which I think the court erred in excluding. The answer alleged as a defense that after the deposit of these checks,

and the payment of the proceeds thereof to Eugene Moch, the plaintiff had released and discharged said Eugene Moch from any and all liability ·to the plaintiff for the checks described in the complaint and the proceeds thereof, and that the plaintiff by its board of directors duly adopted, ratified, and confirmed all the acts and transactions of the said Eugene Moch in connection with the checks described in the complaint and the proceeds thereof.

To prove this defense Eugene Moch was called as a witness by the defendant, and stated that he was an incorporator and the president of the corporation; that no one else was interested in the corporation financially; that Brodie, who was the treasurer ·of the company, was a member of the firm of I. Salaman & Co.; that the E. Moch Company and the firm of I. Salaman & Co. made a contract, which was offered in evidence, and which provided that the firm was to make advances to the corporation, and it was agreed that Eugene Moch should be elected president and H. W. Brodie, or such other person as the firm should nominate, treasurer, and a director thereof. It was further provided that the bank account should be kept in the name of said company in such bank as the president and treasurer of the company should select, and the agreement contained the same general provisions as were contained in the charter of the company. Eugene Moch further agreed to transfer or cause to be transferred to the firm a majority of the capital stock of the company, to be held by the firm as additional security for any of the liabilities of the company mentioned in the agreement, and for the faithful performance by said Moch and the said company of the terms of this agreement, with detailed provisions as to the conduct of the business and the authority of Moch as president, and further provided that in case of default in the performance of any of the terms of the agreement, or upon failure of the company to pay its liabilities to the firm, the firm should have the right to sell the stock at public auction, upon giving to Moch, or the holder of the stock, 10 days' notice; that whenever the liabilities of the company to the firm should have been paid, all right to hold the stock should cease, and thereupon the same should be retransferred to Moch or his assigns, and the proxy become null and void; that the stock should be stamped as issued subject to the terms of this agreement.

Defendant then attempted to prove that the stock of the plaintiff corporation was transferred to Brodie under this agreement, and Brodie was made treasurer of the corporation. The court sustained objections to all of this testimony, and the counsel for the defendant then asked whether he could make an offer of proof; the court having indicated that it would exclude the whole defense. The court replied: "Make the offer as full as you like." Defendant then offered to prove that in the latter part of 1909 Eugene Moch was the real owner of the shares of stock of the E. Moch Company, and the only interest any other person had in the stock was the interest of I. Salaman & Co. and Harry W. Brodie; that the interest of Brodie and the Salaman Company was simply that of creditors holding some of the shares of stock as security for the debt of the corporation.

The court then sustained the objection to the proof of such facts, and the defendant excepted. Defendant further offered to prove that after the transaction alleged in the complaint Eugene Moch and the Salaman Company made a settlement and adjusted the transaction, and under that settlement Eugene Moch transferred to Salaman & Co. all the shares of the capital stock of the plaintiff which Eugene Moch then owned and certain life insurance policies covering the life of Mr. Moch, upon which there was a cash value of some $15,000, and as a result of that any claim of the E. Moch Company against Eugene Moch by reason of the transactions alleged in the complaint was extinguished. Defendant then offered to prove that since the 17th of November, 1908, before the commencement of this action, the plaintiff duly adopted, ratified, and confirmed all the acts and transactions of Eugene Moch in connection with the checks described in the complaint and the proceeds thereof. This offer was refused, and defendant excepted.

Now, it seems to me that the defendant was entitled to prove, as a defense to this action for money had and received, that after the transactions in question, by agreement between the corporation and Eugene Moch, who had misappropriated these checks, Eugene Moch had transferred to the corporation, or to the firm of I. Salaman & Co. for the benefit of the corporation, money or property which would represent the amount of these various checks which he misappropriated and the proceeds of which he had received, and had received a release or extinguishment of his liability to account to the corporation for the proceeds of these checks which defendant had collected and paid to him. Clearly, if the defendant, after having received the proceeds of these checks, and being assumed to be liable to the plaintiff either for conversion or for the proceeds as money had and received, had accounted to the plaintiff, or with its consent to its creditors, or had by a settlement with the plaintiff or its creditors paid to them the amount which it had actually received, and had received from the corporation a release from its obligation to the plaintiff, such a release would be a defense to an action to recover for the proceeds of these checks.

Now the liability of the defendant to the plaintiff depended upon the fact that the defendant had acted for Eugene Moch in collecting these checks, and instead of paying to the company had paid to Moch individually. Any settlement between Moch Company, or on its behalf, which would discharge Eugene Moch from any liability for the misappropriation of the money belonging to the plaintiff received on account of these checks, would, I think, clearly inure to the benefit of the defendant, and such an act of the company, or any act binding the company which would tend to release Eugene Moch from liability to the plaintiff on account of the receipt and misappropriation of these checks, would be a ratification by the plaintiff of Moch's act in collecting the checks, and would release the defendant from any obligation to account to the company for the proceeds. It would clearly be unjust to require defendant to pay back to the company the amount of these checks, if it had received the amount from Moch,

or had accepted property that he transferred to the plaintiff or its creditors with its consent in discharge of his obligation.

As all this evidence was excluded by the court, and the defendant not allowed to prove any facts upon which this defense of ratification of payment was based, we cannot say what facts would have been developed; but it seems to me that the defense in this action as pleaded was a good defense to the cause of action alleged in the complaint, and that the defendant on the trial was entitled to prove that defense, and because the court excluded all testimony tending to prove it, and required defendant to make an offer of proof, instead of calling his witnesses and proving his defense in the ordinary way, he should not be concluded by the method forced upon him by the court, or which he adopted at its suggestion.

The judgment appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs.

HOTCHKISS, J. (concurring in part). I concur in the reversal of the judgment, because of the error of the trial court in excluding the evidence offered by defendant; but I do not concur in so much of the opinion of the Presiding Justice as holds, as matter of law, that the indorsement of the name of plaintiff corporation, written by E. Moch, its de facto president, followed by the indorsement of E. Moch individually, was not a sufficient indorsement by plaintiff. The legal effect of such an indorsement it is not necessary to discuss.

DOWLING, J. (dissenting). I deem the conditions under which defendant received the checks in question for the personal account of E. Moch sufficient to give it notice of their diversion and unauthorized use by Moch, and to put them upon inquiry as to his authority to deal with the checks as his own. The name "E. Moch Company" did not necessarily import that the plaintiff was a corporation, though before the passage of chapter 638, Laws of 1911, that might well have been deemed the ordinary meaning to be attached to such a title. If it was to be regarded as a corporation, then the indorsement of the corporate name upon the checks was unaccompanied by any indication that such indorsement had been made by any officer thereof. If the plaintiff was not a corporation, but was a trade-name assumed by some individual, there was no manner of indorsement to indicate that it was so signed by the person using such name. The defendant had upon its books the personal account of "E. Moch," and no account of "E. Moch Co." The indorsement both of the plaintiff's name, and of Moch himself, the defendant knew to be in Moch's personal handwriting. The diversion to Moch's personal account of checks made to a third party should have put defendant upon inquiry. Such inquiry would have disclosed at once that plaintiff was a corporation, and that under its charter Moch had no power to endorse these checks, but that the same was required under the charter to be done by the treasurer, and that all checks to the order of the corporation were required to be kept in its own bank account.

Nor do I think that the defense of ratification was available to the defendant upon the pleadings. The plaintiff was a corporate entity, and the fact that Moch owned all or nearly all of its stock did not destroy the existence of the corporation, nor affect its relationship with the defendant. The answer of the defendant did not set up any ratification by the stockholders of the plaintiff, but a ratification by its board of directors, which, under its charter, I think they had no right to do; but the proof that was offered was of a ratification by the stockholders of the plaintiff, and that had not been properly impleaded.

I am therefore in favor of affirmance of the judgment appealed from, with costs.

LAUGHLIN, J., concurs.